UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

BONNIE M. ATKINS,

    Plaintiff,

v.

ROCHESTER CITY SCHOOL DISTRICT,

    Defendant.

**DECISION AND ORDER**

6:15-CV-06498 EAW

---

## INTRODUCTION

Plaintiff Bonnie M. Atkins ("Plaintiff") commenced this action against Defendant Rochester City School District ("the District") on August 20, 2015, asserting violations of Title VII of the 1964 Civil Rights Act, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"). (Dkt. 1). Plaintiff alleges disparate treatment as compared to younger and Caucasian employees, resulting in deprivation of equal employment opportunities. (*Id.*). Presently before the Court is the District's motion for summary judgment. (Dkt. 19). Because the Court concludes that Plaintiff has failed to establish a *prima facie* case of discrimination under Title VII or the ADEA, the District's motion is granted.

## BACKGROUND

### I. Proceedings in this Court

Plaintiff filed her complaint in this Court on August 20, 2015. (Dkt. 1). Before filing in federal court, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination by the District

-1-

on the basis of Plaintiff's age and race. (Dkt. 1 at ¶ 9; *see* Dkt. 1 (Exhibit A)). Plaintiff filed the instant action within 90 days of receiving a Right to Sue Letter from the EEOC. (Dkt. 1 at ¶ 4; Dkt. 1 (Exhibit A)). The District filed an answer to Plaintiff's complaint on September 4, 2015. (Dkt. 4). On November 7, 2016, the District moved for summary judgment. (Dkt. 19). Plaintiff filed papers in opposition to the motion on March 2, 2017. (Dkt. 27). The District replied in support of its motion on March 20, 2017. (Dkt. 28).

## II. <u>Factual Background</u>

### A. **Plaintiff's Complaint**

In her complaint, Plaintiff alleges that the District has engaged in unlawful employment practices in violation of Title VII and the ADEA. (Dkt. 1 at ¶¶ 31, 34). Plaintiff states that she was assigned to work as Principal of Freddie Thomas High School during the 2012-2013 school year. (*Id.* at ¶ 14). That school was one of ten in the District targeted for phase-out and closure. (*Id.* at ¶ 15). At Freddie Thomas High School, Plaintiff had about 181 students in 8th grade, and the balance of her students—approximately 340—attended the All City High School Program during the school year, along with students from other phase-out high schools. (*Id.* at ¶ 16).

On September 7, 2013, Plaintiff received her Annual Professional Performance Review ("APPR"). (*Id.* at ¶ 17). She received a rating of "developing." (*Id.*). Plaintiff alleges that upon inquiring into the reasons for her poor rating, she discovered that she had been scored based on incorrect data, causing her to receive a lower rating than her colleagues. (*Id.* at ¶ 19). Plaintiff alleges that she learned that the data for "failures" at the All City High School Program were all attributed to Freddie Thomas High School

instead of to their home phase-out schools. (*Id.* at ¶ 20). Only the successful students from the All City High School Program were attributed to their home phase-out schools; thus, a disproportionately large number of failing students was attributed to Plaintiff in calculating her APPR score. (*Id.* at ¶ 21). Furthermore, Plaintiff alleges that she was not given credit for the generally successful "accelerated" 8th graders who largely performed well on the Regents Exam. (*Id.* at ¶ 22).

Plaintiff appealed her APPR rating, but her appeal was denied. (*Id.* at ¶ 23). By contrast, Plaintiff alleges that a similarly situated administrator/Principal, Sandra Jordan ("Ms. Jordan"), appealed her rating of "developing," and her evaluation was subsequently changed to reflect satisfactory performance. (*Id.* at ¶ 24).

Plaintiff alleges that she was subjected to different terms and conditions of employment based on her age and race, in violation of the ADEA and Title VII, because the APPR ratings of similarly situated individuals who are significantly younger than Plaintiff and who are not African American were not based on their home school failures from the All City High School Program, as were Plaintiff's. (*Id.* at ¶¶ 25-26). According to Plaintiff, the District engaged in unlawful employment practices intentionally and with malice or reckless indifference to Plaintiff's rights. (*Id.* at ¶¶ 27-28). Plaintiff contends that as a result of the discrimination, she suffered materially adverse employment conditions, including a reduced likelihood of promotion or desired transfers within the District, as well as discipline that could threaten her career of more than 40 years. (*Id.* at ¶¶ 31-35).

### B. Summary Judgment Evidence

The following facts are taken from the District's Rule 56 statement of material facts (Dkt. 19-3), Plaintiff's affidavit in response (Dkt. 27-2),[1] and the exhibits submitted by the parties (Dkt. 19-2; Dkt. 19-5; Dkt. 27-3; Dkt. 27-4; Dkt. 27-5; Dkt. 27-6; Dkt. 27-7; Dkt. 27-8; Dkt. 27-9; Dkt. 27-10; Dkt. 27-11; Dkt. 27-12). The facts set forth below are undisputed, unless otherwise noted.

Plaintiff, an African American female who was 64 years old at the time of the events giving rise to this action, has been employed by the District since 1972 and currently holds the position of School Principal. (Dkt. 1 at ¶ 6; Dkt. 19-3 at ¶ 1; Dkt. 27-6 at 2). During the 2012-2013 school year, the District implemented the new APPR evaluation system. (Dkt. 19-3 at ¶ 3). Employees were given an APPR composite score that corresponds to a rating of highly effective, effective, developing, or ineffective. (Dkt. 19-3 at ¶ 5; Dkt. 19-5 at 38 (Exhibit B (APPR Agreement))). As provided by the APPR agreement, a three-member panel reviewed and decided appeals arising from APPR ratings for the 2012-2013 school year. (Dkt. 19-3 at ¶ 4). The District contends that Plaintiff's APPR score was calculated according to the criteria in the APPR agreement. (Dkt. 19-3 at ¶ 5; *see* Dkt. 19-2 (Centrone Declaration at ¶ 4); Dkt. 19-5 at 9 (Deposition of Plaintiff at 23-24); Dkt. 19-5 at 38-45 (Exhibit B (APPR Agreement))).

---

[1] Plaintiff's affidavit in response to Defendant's Rule 56 statement does not conform to the requirements of Local Rule of Civil Procedure 56(a). Plaintiff's responses to Defendant's statements do not consistently pertain specifically to the factual allegations in the corresponding statement, and Plaintiff includes facts that are irrelevant, not in dispute, and are duplicative of the facts in Defendant's statement. However, the Court will cite to Plaintiff's affidavit to the extent that it is responsive to Defendant's Rule 56 statement.

Plaintiff disputes that statement, arguing that her score was computed incorrectly. (Dkt. 27-2 at 2). Plaintiff concedes that she never saw the data on which her APPR score was based, but she seems to suggest that she saw the names of several students who should not have factored into her score, and that her score was calculated using an incorrect roster. (Dkt. 27-2 at 2-3).

Plaintiff appealed her APPR rating. (Dkt. 19-3 at ¶ 6; Dkt. 27-2 at 3). The appeals panel consisted of three individuals—a member selected by the District, Bethany Centrone ("Centrone"), a member selected by the Association of Supervisors and Administrators, Vicki Gouveia ("Gouveia"), and a member mutually selected and agreed upon by the District and the Association, Dan Lowengard ("Lowengard"). (Dkt. 19-3 at ¶ 4; Dkt. 19-2 (Centrone Declaration at ¶ 3)). According to the District, the appeals panel reviewed the student population and the data used to calculate Plaintiff's score and found that Plaintiff's score did not incorrectly include data corresponding to high school students, as Plaintiff had alleged, and that, even if the data were recalculated based on the student roster that Plaintiff believed was appropriate, the change in score would not have been sufficient to raise her overall rating to "effective." (Dkt. 19-3 at ¶ 7; Dkt. 19-2 (Centrone Declaration at ¶ 6)). The appeals panel unanimously agreed to deny Plaintiff's appeal. (Dkt. 19-3 at ¶ 8; Dkt. 19-2 (Centrone Declaration at ¶ 7)).

Plaintiff argues that her APPR rating was based on deliberately false information and data, and that the appeals panel wrongfully denied her appeal. (Dkt. 27 at ¶ 12). According to Plaintiff, someone in the Office of Accountability checked the data used to calculate Plaintiff's score and informed Plaintiff that "10 other schools were placed under

-5-

[her] name, and that all of their failing students were assigned to [Plaintiff]/Dr. Freddie Thomas High School." (Dkt. 27-2 at 3). Plaintiff submits no evidence in support of that allegation, and she stated in her deposition that she never obtained the data used to calculate her APPR rating. (Dkt. 19-5 at 10-11 (Deposition of Plaintiff at 26-30)). Plaintiff also contends that the appeals panel did not review the total student population and the data that was used to calculate her score, but only reviewed the data for 8th grade. (*Id.* at 4). However, an email exchange between members of the appeals panel states that Plaintiff's score was calculated "solely based on her students' 8th grade . . . scores" and that high school student data "would not have been included in the calculation of her score." (Dkt. 19-5 at 111-12 (Exhibit C)). Plaintiff offers no evidence to suggest that her score should have been calculated based on additional or different data. Plaintiff also states that only two members of the appeals panel officially participated in the review of Plaintiff's appeal. (Dkt. 27-2 at 4). However, emails exchanged between the panel members demonstrate that all three members were involved in the decision to affirm Plaintiff's score. (*See* Dkt. 19-5 at 111-12 (Exhibit C)). The District states that Plaintiff does not know how or why the alleged data error occurred. (Dkt. 19-3 at ¶ 9). Plaintiff takes issue with that statement, arguing that she never said that an error occurred, but rather alleged that the District treated her differently from similarly situated employees by deliberately submitting inaccurate data. (Dkt. 27-2 at 4).

During the 2012-2013 school year, Ms. Jordan was a principal of the All City High School Program, which was comprised of students from high schools throughout the District. (Dkt. 19-3 at ¶ 11; Dkt. 19-2 (Centrone Declaration at ¶ 8)). Ms. Jordan's

APPR composite score also corresponded to a rating of "developing." (Dkt. 19-3 at ¶ 11; Dkt. 19-2 (Centrone Declaration at ¶ 8)). According to Plaintiff, Ms. Jordan should not have received an APPR rating at all because a chart distributed by the District states that administrators of programs should not receive APPR scores. (Dkt. 27-2 at 4). Ms. Jordan appealed her APPR rating based on the state's failure to include hundreds of students in calculating her score. (Dkt. 19-3 at ¶ 12; Dkt. 19-5 at 98-99 (Exhibit C (email from Centrone to Ms. Jordan))). Upon reviewing the data, the appeals panel concluded that there was, in fact, an error in the score originally assigned to Ms. Jordan. (Dkt. 19-3 at ¶ 12; Dkt. 19-5 at 111 (Exhibit C (email from Centrone to Lowengard and Gouveia))). Ms. Jordan's score was then recalculated, and the recalculation brought her score into the range for an "effective" rating under the APPR agreement. (Dkt. 19-3 at ¶ 13; Dkt. 19-2 (Centrone Declaration at ¶ 9)). The appeals panel unanimously agreed to grant Ms. Jordan's appeal and change her rating to "effective." (Dkt. 19-3 at ¶ 13; Dkt 19-2 (Centrone Declaration at ¶ 9)). Plaintiff contends, without supporting evidence, that Ms. Jordan's score was not recalculated, and that Ms. Jordan "only needed to show one error to get her rating changed to 'Effective.'" (Dkt. 27-2 at 5).

According to the District, Plaintiff and Ms. Jordan, who is Caucasian and 57 years old, were not similarly situated, in that the appeals panel reviewed and analyzed data unique to each of their individual circumstances in deciding their appeals. (Dkt. 19-3 at ¶ 14; Dkt. 19-2 (Centrone Declaration at ¶ 5)).[2] Furthermore, Plaintiff was a principal of

---

[2] Plaintiff stated in her deposition that Ms. Jordan was "maybe 54" at the time of their APPR appeals. (Dkt. 19-5 at 20 (Deposition of Plaintiff at 67)). Ms. Jordan is

a school that enrolled only 8th graders, while Ms. Jordan was the principal of a program with students enrolled in grades 9 through 12. (Dkt. 19-3 at ¶ 14; Dkt. 19-2 (Centrone Declaration at ¶ 5)). Therefore, their scores were calculated very differently. (Dkt. 19-3 at ¶ 14; Dkt. 19-2 (Centrone Declaration at ¶ 5)). Plaintiff again argues that Ms. Jordan should not have received an APPR rating because she was principal of a program, and not a school. (Dkt. 27-2 at 5). According to Plaintiff, the scores of Ms. Jordan's students should have been counted towards each student's respective home school, and not attributed to Ms. Jordan. (*Id.*).

## DISCUSSION

### I. Standard for Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court concludes that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*."

---

younger than Plaintiff, who was 64 years old when she filed her EEOC charge. (Dkt. 27-6).

*Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec.*, 475 U.S. at 586-87). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

## II. <u>Discrimination under Title VII and the ADEA</u>

Discrimination claims under Title VII and the ADEA are governed by a three-step burden shifting analysis. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107-110 (2d Cir. 2010) (applying *McDonnell Douglas* framework in ADEA context). Plaintiff bears the initial burden of proving a *prima facie* case of race or age discrimination by a preponderance of the evidence. To establish a *prima facie* case of age discrimination under the ADEA or race discrimination under Title VII, the plaintiff must prove that: (1) she was within the protected class; (2) she was qualified for the position and was satisfactorily performing her duties; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *See Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir. 2003); *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 253 (E.D.N.Y. 2012), *aff'd*, 713 F.3d 163 (2d Cir. 2013). Although "a plaintiff's burden of establishing a *prima facie* case is *de minimis*" at the summary judgment stage, *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 467 (2d Cir. 2001), "[a] jury cannot infer discrimination from thin air," *Ikejiaku v. Rochester City Sch. Dist.*, No. 07-CV-6191, 2011 WL 1099131, at *5 (W.D.N.Y. Mar. 22, 2011).

Turning to the first requirement for a *prima facie* case of discrimination, the ADEA protects individuals who are at least 40 years of age. 29 U.S.C. § 631(a). Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to . . . discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race . . . or national origin." 42 U.S.C. § 2000e-2(a). The District does not argue that Plaintiff is not a member of the protected classes. The District also does not make an argument based on the second requirement, Plaintiff's qualifications or job performance.

With respect to the third requirement, an adverse employment action is a "materially adverse change in the terms and conditions of employment." *See Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation marks omitted). The change must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Terry*, 336 F.3d at 138. Adverse employment actions include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Id.* (alteration in original). "Criticism of an employee in the course of evaluating and correcting her work is not an adverse employment action." *Sotomayor*, 862 F. Supp. 2d at 254. Nor do negative employment evaluations constitute adverse employment actions unless they trigger other negative consequences, such as a change in compensation, benefits, or job title. *See Chung v. City Univ. of N.Y.*, 605 F. App'x 20, 22 (2d Cir. 2015) (holding negative performance review, without more, does not represent an adverse employment

-10-

action (quoting *Fairbrother v. Morrison*, 412 F.3d 39, 56-57 (2d Cir. 2005) (surveying cases))); *Browne v. City Univ. of N.Y.*, 419 F. Supp. 2d 315, 333-34 (E.D.N.Y. 2005) ("A negative evaluation alone, absent some accompanying adverse result such as a demotion, diminution of wages, or other tangible loss, does not constitute an adverse employment action.").

Finally, a plaintiff may raise an inference of discrimination by showing that the employer subjected her to disparate treatment—"that is, [by] showing that the employer treated plaintiff 'less favorably than a similarly situated employee outside [her] protected group.'" *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)). The plaintiff must show that she was "similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Graham*, 230 F.3d at 39 (internal quotation marks omitted). To satisfy the "all material respects" standard, there must be a "reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases." *Id.* at 40. Plaintiff and the comparator must "share 'a sufficient amount of significant employment characteristics,' including similar educational backgrounds, seniority, performance, and work duties." *Thomas v. iStar Fin., Inc.*, 438 F. Supp. 2d 348, 368 n.7 (S.D.N.Y. 2006) (quoting *DeJesus v. Starr Tech. Risks Agency, Inc.*, No 03 Civ. 1298, 2004 WL 2181403, at *9 (S.D.N.Y. Sept. 27, 2004)), *aff'd*, 629 F.3d 276 (2d Cir. 2010).

If a plaintiff can establish a *prima facie* case of discrimination, the burden of production shifts to the employer to demonstrate "a legitimate, non-discriminatory reason for its decision not to hire" her. *Ruszkowski v. Kaleida Health Sys.*, 422 F. App'x 58, 60

(2d Cir. 2011). "The burden then shifts back to the plaintiff to present evidence that the employer's proffered reason is a pretext for an impermissible motivation." *Id.*

### III. Plaintiff Has Failed to Establish a *Prima Facie* Case of Discrimination

#### A. No Adverse Employment Action

The District argues that Plaintiff has failed to establish a *prima facie* case of either race or age discrimination. (Dkt. 19-4 at 8). The District contends, first, that Plaintiff has not shown that she suffered an adverse employment action. (*Id.* at 6). According to the District, Plaintiff alleges, in a conclusory fashion, that she suffered "lost salary and wages, fringe benefits, and other forms of compensation, as well as loss of career opportunity and advancement" (Dkt. 1 at ¶¶ 32, 35), but the record contains no evidence to support those claims. (Dkt. 28 at 2). Plaintiff counters that she has demonstrated that she suffered adverse employment actions. (Dkt. 27 at 16, 18). She cites to Exhibits 8-11, submitted with her opposition papers. (*Id.* at 18). Exhibit 8 is a letter from the APPR appeals panel to Ms. Jordan informing her of her score adjustment. (Dkt. 27-9 (Exhibit 8)). Exhibit 9 is a letter from the APPR appeals panel to Plaintiff affirming Plaintiff's APPR score and rating. (Dkt. 27-10 (Exhibit 9)). Exhibit 10 is an email sent by Plaintiff in which she explains why she believes her APPR score was wrong. (Dkt. 27-11 (Exhibit 10)). Exhibit 11 is a letter from appeals panel member Centrone to Plaintiff informing Plaintiff of her APPR score and rating. (Dkt. 27-12 (Exhibit 11)). Those exhibits contain no evidence that Plaintiff suffered an adverse employment action.

Plaintiff has also submitted the affidavits of Dr. Lisa Young (Dkt. 27-4) and Melvin Cross (Dkt. 27-5), employees of the District. Those affidavits discuss ways in

-12-

which the District treated Plaintiff less favorably than other administrators during the 2012-2013 school year (Dkt. 27-4; Dkt. 27-5),[3] and Dr. Young contends that those conditions "created an unpleasant working environment for staff and students and adverse employment conditions for [Plaintiff]" (Dkt. 27-4 at 3). The Young and Cross affidavits do not contain evidence of an adverse employment action resulting from Plaintiff's APPR evaluation because they describe circumstances observed during the 2012-2013 school year, before Plaintiff's APPR score for that school year was calculated. (*See* Dkt. 19-3 (Centrone Declaration at ¶ 5 (stating Plaintiff received her APPR rating based on the 2012-2013 school year in September 2013)); Dkt. 19-5 at 30 (Deposition of Plaintiff at 19 (affirming that Plaintiff received her APPR rating on September 7, 2013))).

In short, Plaintiff has submitted no evidence that she suffered an adverse employment action as a result of the alleged discriminatory calculation of her APPR score. Plaintiff has provided the Court with nothing more than the vague suggestion in her complaint that negative consequences flowed from the alleged discrimination. (*See* Dkt. 1). The record contains no evidence that Plaintiff suffered the complained-of adverse employment actions: reduced likelihood of promotion or desired transfers within the District, or discipline. As explained above, a negative employment evaluation, without other negative consequences, does not constitute an adverse action. *Browne*, 419 F. Supp. 2d at 333-34. The exhibits Plaintiff has submitted to support her allegation of an adverse action contain evidence only of Plaintiff's APPR score and rating—a negative

---

[3] The affidavits of Dr. Lisa Young and Melvin Cross are discussed in more detail below, in the section regarding unexhausted claims.

employment evaluation—but lack evidence of any negative consequences resulting from that evaluation. "[I]n the summary judgment context, mere conclusory allegations . . . in legal memoranda or oral argument are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hooker v. Fournier*, 29 F. App'x 641, 643 (2d Cir. 2002) (internal quotation marks omitted) (alteration in original). Thus, there is no genuine issue of material fact with regard to whether Plaintiff suffered an adverse employment action, and Plaintiff has not met her burden to prove a *prima facie* case of discrimination under the ADEA or Title VII.

### B. No Inference of Discrimination

The District also argues that Plaintiff cannot establish that any alleged adverse employment action occurred under circumstances giving rise to an inference of discrimination. (Dkt. 19-4 at 6). The District contends that Plaintiff alleges no facts and presents no evidence to support an inference that her APPR score and rating and the denial of her appeal occurred as a result of race or age discrimination. (*Id.*). Plaintiff disagrees, arguing that she has established that Ms. Jordan, a similarly situated employee who is Caucasian and younger than Plaintiff, was treated more favorably than Plaintiff "in an identical situation." (Dkt. 27 at 18). The Court concludes that even if Plaintiff had established that she suffered an adverse employment action, she would not be able to demonstrate that such action occurred under circumstances giving rise to an inference of discrimination.

The evidence in the record shows that Ms. Jordan and Plaintiff were not similarly situated "in all material respects." *Graham*, 230 F.3d at 39. Ms. Jordan is a principal of

-14-

a program (Dkt. 19-3 at ¶ 11), while Plaintiff is a principal assigned to a school (Dkt. 1 at ¶ 14; Dkt. 19-3 at ¶ 1). In her deposition, Plaintiff stated that a principal of a program is not governed by the APPR agreement. (Dkt. 19-5 at 8 (Deposition of Plaintiff at 20)). More significantly, Plaintiff and Ms. Jordan are not similarly situated because the facts in the record show that Ms. Jordan's appeal was granted because the appeals panel concluded that there was an error in her original score. (Dkt. 19-3 at ¶ 12; Dkt. 19-2 (Centrone Declaration at ¶ 9)). Plaintiff contests that fact but offers no evidence to suggest that Ms. Jordan's appeal was granted for a reason other than genuine error in her original score calculation. (*See* Dkt. 27-2 at 5). The evidence shows that Plaintiff also appealed her APPR score and rating, and the appeals panel reviewed the information provided by Plaintiff and verified the data used to calculate her score. (Dkt. 19-3 at ¶ 8; Dkt. 19-2 (Centrone Declaration at ¶ 7); Dkt. 19-5 at 111-12 (Exhibit C (email from one member of appeals panel to other two members explaining recommendation to uphold Plaintiff's APPR score))). Plaintiff has submitted no evidence to suggest that the appeals panel reached an incorrect conclusion, much less under circumstances giving rise to an inference of discrimination.

The Court concludes that there is no evidence in the record that Plaintiff was given a low APPR rating as a result of discrimination. Because there is no issue of material fact with respect to whether Plaintiff has made a *prima facie* showing of discrimination based on race or age, the District's motion for summary judgment is granted.

## IV. Unexhausted Claims

"As a precondition to a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC." *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018). Claims, although not brought before the EEOC with particularity, are adequately exhausted when "they nonetheless are reasonably related to the charged conduct by virtue of . . . falling within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Francis v. City of New York*, 235 F.3d 763, 766 (2d Cir. 2000) (internal quotation marks omitted). "The central question is whether the complaint filed with the EEOC gave that agency adequate notice to investigate discrimination of the type alleged in the civil complaint." *McCullough v. Xerox Corp.*, 942 F. Supp. 2d 380, 383-84 (W.D.N.Y. 2013) (citations, alterations, and quotations omitted).

Plaintiff has submitted as exhibits the affidavits of Dr. Lisa Young (Dkt. 27-4) and Melvin Cross (Dkt. 27-5). Dr. Young's affidavit describes ways in which the District treated Plaintiff less favorably than other administrators during the 2012-2013 school year. For example, Dr. Young states that Plaintiff did not have a "clean professional private office space" like other administrators in her position. (Dkt. 27-4 at 2). She also states that Plaintiff did not receive the same administrative, clerical, registrar, security, or bilingual support that was given to other principals in the building. (*Id.* at 2-3). Mr. Cross's affidavit also describes conditions that he observed while working with Plaintiff during the 2012-2013 school year. (Dkt. 27-5). He states that he "noticed discrepancies

between the way [Plaintiff] . . . was treated by [the District] compared to other administrators" at Freddie Thomas High School. (*Id.* at 2). He lists examples including a lack of clerical, administrative, and security support. (*Id.*). Mr. Cross notes that other principals received adequate support and resources, and that he believes the difference in treatment "was because of [Plaintiff's] age and length of time in the district." (*Id.*).

The District argues that the Cross and Young affidavits are not reasonably related to Plaintiff's EEOC charge or her complaint in this Court (Dkt. 28 at 34), and the Court agrees. Plaintiff's complaint and her EEOC charge assert narrow claims concerning the APPR score and rating that Plaintiff received for the 2012-2013 school year, the data used to calculate her score, and the denial of her appeal. (Dkt. 1; Dkt. 27-6). In her EEOC charge, Plaintiff alleged that she was subjected to different terms and conditions of employment based on her age and race because "the [APPR] ratings of similarly situated individuals" who are younger and who are not African American "did not include their 'home school' failures from the All City High School Program." (Dkt. 27-6 (EEOC charge)). Similarly, Plaintiff's complaint raises claims concerning the District's "unjustified and pre-textual targeting of Plaintiff's performance in her [APPR]." (Dkt. 1 at ¶ 11).

The Court concludes that the EEOC investigation that would have been expected to grow out of the charged conduct would not have extended to the resources and support Plaintiff received during the 2012-2013 school year. Plaintiff's allegations are limited to circumstances surrounding the calculation of the APPR score, which occurred during the following school year. Thus, an investigation would have reasonably included an

examination of the data and methods used to calculate that score and of the review subsequently conducted by the appeals panel. Nothing suggests that Plaintiff's EEOC charge would have given that agency adequate notice to investigate discrimination in the form of inadequate resources and support during the prior school year. *See McCullough*, 942 F. Supp. 3d at 383-84. Because Plaintiff has not exhausted claims of inadequate support and resources, the facts discussed in the Cross and Young affidavits are not properly before this Court insofar as they address claims that are not reasonably related to Plaintiff's APPR rating.

## **CONCLUSION**

For the foregoing reasons, the District's motion for summary judgment (Dkt. 19) is granted and Plaintiff's claims are dismissed with prejudice. The Clerk of Court is directed to close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

DATED: March 30, 2018
Rochester, New York